IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNIVERSITY OF WISCONSIN HOSPITAL
AND CLINICS, INC.,

      OPINION and ORDER

      Plaintiff,

v.                      13-cv-197-jdp

AETNA LIFE INSURANCE COMPANY,
ADP TOTALSOURCE INC. HEALTH AND
WELFARE PLAN, and ADP
TOTALSOURCE, INC.,

      Defendants.

---

This is an action to recover payment for benefits provided under an employee health care plan governed by the Employee Retirement Income Security Act (ERISA). ERISA allows a participant in an ERISA-governed plan to bring a civil action to recover benefits due under the terms of his plan. 29 U.S.C. § 1132(a)(1)(B). The defendants in this case provided a health plan to the employees of Dik Drug Company, including James Vana. Defendant ADP TotalSource, Inc. is the plan administrator.[1] Aetna Life Insurance Company provides the insurance policy that pays benefits under the plan and also decides what is covered.

This action is brought not by the participant himself, Vana, but by his health care provider, plaintiff University of Wisconsin Hospital and Clinics, Inc. (UW Hospital). Vana underwent a heart catheterization at the UW Hospital, a procedure that would likely have been covered under Vana's plan if it had been properly "precertified" as medically necessary. But it was not precertified, an oversight by UW Hospital, but no fault of Vana's. Aetna has

---

[1] Although the complaint refers to the plan as "ADP TotalSource, Inc. Health and Welfare Plan," the plan document identifies it as ADP TotalSource, Inc. Dkt. 16-1, at 97.

refused to pay UW Hospital for the procedure.  Vana assigned his rights under the plan to UW Hospital, and now UW Hospital seeks payment from the defendants.

Before the court are the parties' cross-motions for summary judgment.  Dkt. 3 and Dkt. 17.  UW Hospital contends that despite its failure to precertify, the plan requires Aetna to pay for Vana's procedure, although possibly at modestly reduced rate.  Aetna and the other defendants disagree for two reasons.  First, Aetna contends that UW Hospital does not have standing to bring an ERISA claim under 29 U.S.C. § 1132 because Vana himself will not be billed for the heart catheterization, and thus he has no rights to assign to UW Hospital.  Second, Aetna contends that its denial of benefits was reasonable by the terms of the plan, which, for network providers such as UW Hospital, puts the burden to precertify and the consequences of failing to do so squarely on the provider.  The court concludes that UW Hospital has standing under ERISA, and that Aetna's denial of benefits was contrary to the terms of the plan.  Accordingly, the court will grant UW Hospital's motion for summary judgment and deny defendants' motion.


## UNDISPUTED FACTS

The court finds that the following facts are material and undisputed.

UW Hospital is a Wisconsin non-profit corporation that provides medical services and operates a hospital in Madison, Wisconsin.  In June 2011, Vana's primary care physician recommended that Vana have a cardiac catheterization.  One of the nurses who worked with the primary care physician scheduled the procedure with UW Hospital.  Doctors at UW Hospital performed the cardiac catheterization on Vana.  The total cost of the UW Hospital care was $14,017.83, which included the catheterization itself and some additional services.

2

At the time of the procedure, Vana was a participant in an employee health and welfare plan sponsored by ADP TotalSource, Inc., with benefits underwritten and insured by Aetna. UW Hospital is a network provider under the plan.[2] Aetna initially paid $1,919.32 of the total cost of the care UW Hospital provided to Vana, and cited $213.27 as Vana's responsibility. Aetna prepared an "Explanation of Benefits" document refusing to pay the balance because neither Vana nor UW Hospital sought precertification for the catheterization itself, as required for that procedure. UW Hospital repeatedly appealed Aetna's denial of benefits, admitting its failure to precertify the catheterization, and asking Aetna to retroactively authorize Vana's procedure. Aetna resolutely refused, on the grounds that the denial was "administrative" and that there were no "contract exceptions" to excuse UW Hospital's failure to seek precertification. Aetna declined to undertake a "medical necessity" review to determine if Vana's procedure would have been covered had UW Hospital sought precertification. Vana assigned his right to recover benefits to UW Hospital, which filed a complaint in Dane County Circuit Court seeking payment from the defendants. The defendants timely removed to this court alleging federal question jurisdiction because the dispute involves the enforcement of rights under an ERISA-governed plan.

Two documents describe the plan and govern its operation: the Benefit Plan and the insurance policy. The Benefit Plan describes the rights and obligations of Aetna and plan

---

[2] The defendants have adduced some evidence in support of their contention that UW Hospital is a network provider, but UW Hospital does not concede the point. The defendants' evidence would not be conclusive if UW Hospital had adduced any evidence to controvert it, but it did not. In any case, given the court's decision in favor of UW Hospital, the distinction is not material because UW Hospital's position in this dispute would only be stronger if it were an out-of-network provider.

participants, what the plan covers, and how benefits are paid.[3]  Dkt. 16-1, at 1-106 (In this Opinion, page citations to docket entries are to the file-stamped page numbers in the ECF headers).  The second document, Aetna's underlying insurance policy, contains the terms and conditions of coverage.  Dkt. 16-2, at 72-102.  The preface to the Benefit Plan explains that the Benefit Plan "is part of the Group Insurance Policy between Aetna Life Insurance Company and the Policyholder."  Dkt. 16-1, at 4.  The preface also states that "[a] person covered under this plan and their covered dependents are subject to all the conditions and provisions of the Group Insurance Policy."  *Id.*

The precertification process in the Benefit Plan is particularly important to this case. It is described in a section entitled "Understanding Precertification."  *Id.* at 14-16.  This section of the Benefit Plan explains the purpose underlying the precertification requirement and describes the overall process:

> Certain services, such as inpatient stays, certain tests, procedures and outpatient surgery require precertification by Aetna. Precertification is a process that helps you and your physician determine whether the services being recommended are covered expenses under the plan. It also allows Aetna to help your provider coordinate your transition from an inpatient setting to an outpatient setting (called discharge planning), and to register you for specialized programs or case management when appropriate.
>
> You do not need to precertify services provided by a network provider. Network providers will be responsible for obtaining necessary precertification for you. Since precertification is the provider's responsibility, there is no additional out-of-pocket cost to you as a result of a network provider's failure to precertify services.

---

[3] Aetna styles this document as a "Booklet-Certificate" and notes that the document includes a "Schedule of Benefits."  For simplicity, the court will refer to the entire document as the Benefit Plan.

4

> When you go to an out-of-network provider, it is your responsibility to obtain precertification from Aetna for any services or supplies on the precertification list below. If you do not precertify, your benefits may be reduced, or the plan may not pay any benefits.

*Id.* at 14 (original emphasis on defined terms omitted).  Plan participants are not responsible for precertification of services from network providers; the network provider is responsible. Plan participants are, however, responsible for precertification of services from out-of-network providers.

The consequence to a participant of failing to secure precertification is not necessarily denial of coverage.  Under the terms of the Benefit Plan, participants who fail to obtain precertification before undergoing treatment can still receive benefits if the policy would have covered such services had the participant sought precertification.  The Benefit Plan explains that:

> A precertification benefit reduction will be applied to the benefits paid if you [the participant] fail to obtain a required precertification prior to incurring medical expenses. This means Aetna will reduce the amount paid towards your coverage, or your expenses may not be covered. You will be responsible for the unpaid balance of the bills.
>
> You are responsible for obtaining the necessary precertification from Aetna prior to receiving services from an out-of-network provider. Your provider may precertify your treatment for you; however you should verify with Aetna prior to the procedure, that the provider has obtained precertification from Aetna. If your treatment is not precertified by you or your provider, the benefit payable may be significantly reduced or your expenses may not be covered.

*Id.* at 15-16 (original emphasis on defined terms omitted).  The Benefit Plan contains a chart that indicates the consequences of failing to request precertification.  The chart explains that the result of failing to secure precertification is that covered expenses are subject to the

precertification benefit reduction provided for in the Schedule of Benefits.  The applicable precertification benefit reduction under the plan is $400.  Dkt. 16-2, at 8.


# OPINION

The sole claim remaining in this case is UW Hospital's ERISA claim for recovery of benefits against the defendants, brought as the assignee of Vana, the plan participant.  UW Hospital acquiesced to the dismissal of its other ERISA claims.  Dkt. 12.  UW Hospital voluntarily dismissed its state-law claims, out of concern that those claims would be preempted.  Dkt. 2.  The dismissal of the state-law claims may explain a puzzling gap in the parties' submissions: although the Benefit Plan states that network providers have contracted with Aetna to provide services for a negotiated charge, Dkt. 16-1, at 86, neither party has put the terms of the network provider contract into the record.  But the rights and obligations between Aetna and UW Hospital are of no consequence to the claim before the court, which depends on Vana's rights under the plan, and UW Hospital's right to assert them.

The facts material to the UW Hospital's ERISA claim are undisputed.  The terms of the plan are in the record, and the conduct of the parties is undisputed.  The case thus turns on the interpretation of the plan in view of the applicable law.  Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Neither side has pointed to any factual dispute that would require trial.

**A. UW Hospital has standing to sue as the assignee of Vana's rights under the plan.**

Defendants contend that Vana could not have pursued this action against Aetna because he does not need to be made whole. Defendants argue that Vana has not been billed for his procedure and the terms of the group insurance policy state that he never will (at least not by Aetna). As Vana assigned his rights to his health care provider, UW Hospital has no more entitlement to relief than Vana would have if he pursued the action directly. *See Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 864 (7th Cir. 1997) ("[E]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor.") (internal citations omitted); *Decatur Mem'l Hosp. v. Conn. Gen. Life Ins. Co.*, 990 F.2d 925, 927 (7th Cir. 1993) ("An assignee cannot have greater rights than the assignor possessed, and . . . the beneficiary cannot obtain more than the plan provides in writing."). Defendants contend that UW Hospital is ultimately trying to recover its *own* loss rather than Vana's, and that such claims fall outside those authorized by 29 U.S.C. § 1132.

Section 1132(a)(1)(B) allows a health plan's participant or his beneficiary to bring a civil action to recover benefits due and "supplies jurisdiction when a provider of medical services sues as assignee of a participant." *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). "ERISA defines a 'beneficiary' as 'a person designated by a participant . . . who is or may become entitled to a benefit' under the plan." *Id.* (internal citations omitted). The parties agree that Vana assigned his right to benefits to UW Hospital, *see* Dkt. 25, ¶ 9, so the critical question is whether Vana was or could become entitled to benefits under his plan. "In order to establish that he or she 'may become eligible' for benefits, a

7

claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989).

UW Hospital has a strong claim that Vana would prevail in a suit against Aetna. Vana received valuable medical services, and although Aetna asserts that it will never bill him for those services, UW Hospital could bill Vana directly.[4]  Should UW Hospital do so, Vana would undoubtedly have a claim against Aetna, as his policy promises that he will never incur out-of-pocket costs for a network health care provider's failure to precertify services.  Dkt. 16-1, at 14.  Vana has the right to a benefit—coverage for the catheterization—which he has assigned to UW Hospital.  The court's conclusion on this point is reinforced by the plan itself, which contemplates that network providers will file claims for plan participants, and that Aetna will pay the providers directly.  *Id*. at 74 (Payment of Benefits).  In the ordinary operation under the plan, a network provider such as UW Hospital would submit claims directly to Aetna, without first requiring the participant to assert claims in his own right.

Preventing UW Hospital from asserting Vana's rights would defeat ERISA's purposeful protection of plan participants and beneficiaries, and other courts have declined to impose such requirements on health care providers who bring suit under ERISA.  *See, e.g.*, *Brown v. Sikora & Assocs., Inc.*, 311 F. App'x 568, 571 (4th Cir. 2008) ("When assignees of ERISA benefits have been found to have derivative standing, they could have sued the actual ERISA participants . . . Thus permitting derivative standing in these cases would further the

---

[4] Defendants submit a letter from Aetna to UW Hospital that says that the UW Hospital may not bill Vana directly unless UW Hospital secured a written agreement to that effect before providing services to Vana.  But Aetna's letter does not determine UW Hospital's rights with respect to Vana.

purposes of ERISA 'to protect the interests of participants in employee benefit plans and their beneficiaries.'") (internal citations omitted); *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) ("[A]n assignment will not facilitate a plan participant's or beneficiary's receipt of benefits if the plan does not pay the benefits it owes, and provider-assignees are not permitted to sue on the participant's or beneficiary's behalf."). In *Cagle*, the Eleventh Circuit noted that "[i]f provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid." *Id.* The court went on to conclude that "providers . . . are better situated and financed to pursue an action for benefits owed for their services [and] the interests of ERISA plan participants and beneficiaries are better served by allowing provider-assignees to sue ERISA plans." *Id.* (internal citations omitted). Because defendants offer no authority to contradict this trend or to support the rigid formalities they would impose on health care providers and participants, the court concludes that UW Hospital has standing to pursue this case.

**B. The court will review Aetna's denial of benefits under an "arbitrary and capricious" standard.**

The parties dispute the standard of review applicable to Aetna's denial of benefits. The default standard of review in ERISA cases is de novo. *Firestone Tire & Rubber Co.*, 489 U.S. at 115. But defendants advocate for a more deferential "arbitrary and capricious" standard, because the plan gives its claims administrator discretionary authority to pay or deny claims. *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 989 (7th Cir. 2005). UW Hospital contends that a more exacting de novo standard applies because the discretionary authority

given to the plan's claims administrator comes from the Aetna insurance policy, not the Benefit Plan document.  Defendants have the better argument because the Benefit Plan document plainly incorporates the terms of the insurance policy, which grants broad discretion to the administrator.  The court will assume, without deciding, that Aetna's denial of benefits should be reviewed under the arbitrary and capricious standard, because Aetna's denial would be improper under either standard.

### C.  UW Hospital is entitled to benefits.

The court now turns to the whether Aetna's denial of benefits was reasonable under the plan's governing documents.  Under the arbitrary and capricious standard of review, the court will not set aside a denial of benefits "if it was based upon a reasonable interpretation of the plan documents." *James v. Gen. Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000).  The court will not interfere with a plan administrator's denial simply because it disagrees with the ultimate conclusion; rather, UW Hospital must demonstrate that the administrator "not only made the wrong call, but that he made a 'downright unreasonable' one." *Chojnacki v. Georgia-Pac. Corp.*, 108 F.3d 810, 816 (7th Cir. 1997) (internal citations omitted).  Here, the denial of benefits was "downright unreasonable" because Aetna: (1) ignored the fact that Vana, in whose shoes UW Hospital stands, would plainly be entitled to benefits under the plan; (2) never articulated to UW Hospital a legitimate reason for its denial; and (3) interpreted its policy in an unreasonably contradictory manner.

The court starts with the problem that the plan documents do not define the relationship between care providers and the plan.  Rather, the plan defines the relationship between the plan and its participants.  The defendants do not dispute that Vana would be

10

entitled to coverage for his heart catheterization, despite the lack of precertification. If UW Hospital had been an out-of-network provider, Vana would be entitled to coverage subject only to the $400 precertification benefit reduction. If UW Hospital were, as it appears, a network provider, Vana would be entitled to full coverage without any precertification benefit reduction at all. If UW Hospital were to bill Vana for the catheterization, Vana could make a claim for benefits under the plan, and Aetna would have to pay it. The plan is unequivocal that Vana suffers no loss of benefits as a result of a network provider's failure to precertify. Aetna's denial of benefits to UW Hospital as Vana's assignee is hard to rationalize under the terms of the plan, when Vana himself has such a clear entitlement to the benefits.

A further reason that Aetna's denial was unreasonable is that Aetna's response to UW Hospital's repeated appeals and requests for retroactive precertification did not clearly explain the basis for the denial. Among the factors a court considers in evaluating whether a denial was arbitrary and capricious is whether the claimant is afforded adequate process, and the quality of the fiduciary's reasoning. *See Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995). Here, in response to each appeal by UW Hospital, Aetna responded in essentially the same way by declaring that the refusal was "administrative" because precertification was required. For example, the final appeal response from the Aetna complaint and appeal analyst provided:

> We are upholding the original benefits determination for the service described by code 93458. Based on our review of the file, we are not able to honor your request for payment. The services are required to be certified by MedSolutions prior to services being rendered. Our records show that precertification was not obtained; therefore, we are upholding the denial as administrative. Since the administrative denial is based on the

> health plan's provisions, a medical necessity review will not be
> conducted. Therefore, no additional payment will be made with
> respect to the above listed claim.

Dkt. 16-3, at 19.  Aetna did not point to any contractual provision in the plan—or in a network provider contact—that precluded a network provider from obtaining precertification after the fact.  Nor did Aetna provide any policy reason for why in-network providers should be subject to such unyielding precertification requirements, when out-of-network providers could so easily secure after-the-fact precertification.  Aetna's response that the denial was "administrative" is tantamount to offering no explanation whatsoever for its refusal to conduct a medical necessity review.

The final reason that Aetna's denial is arbitrary and capricious is that Aetna's interpretation of the plan (as advanced in this case, because Aetna advanced none in the appeal process) is unreasonably contradictory.  Again, the court notes that the plan documents do not expressly say what happens to a health care provider who provides treatment without first securing precertification.  The description of the precertification process, Dkt. 16-1, at 14-16, expressly address only what happens to the *participant's* benefits. A subsection of the precertification section, under the heading "How Failure to Precertify Affects Your Benefits," provides that the participant's benefits are reduced by the $400 precertification benefit reduction if the participant fails to obtain a required precertification before incurring medical expenses, and that the participant is responsible for the unpaid balance of the bills.  *Id*. at 15.

Aetna argues that the "How Failure to Precertify Affects Your Benefits" section applies only to care provided by out-of-network providers, because the text refers to what happens "if *you* fail to obtain a required precertification."  Because the participant has no obligation to

obtain precertification for care provided by network providers, "you" (that is the participant) could never fail to obtain precertification.   The failure would always be the network providers' and not "yours."   But there are two problems with this argument.

First, it disregards other parts of the description of precertification.   The section entitled "How Your Benefits are Affected" contains a chart indicating what happens "if necessary precertification is not obtained."   This section does not distinguish between precertification that is not obtained by the participant or the provider.   It appears, by its terms, to apply to any failure to obtain precertification.   And in each case set out in the chart, the failure to precertify results in a precertification benefit reduction, not a denial of coverage.[5]   Aetna's argument also ignores the preceding section, entitled "The Precertification Process." This section states "You are responsible for obtaining precertification," without distinguishing between in- and out-of-network care.   Aetna's argument that the precertification benefit reduction applies only to out-of-network providers does not fit consistently with the plan's description of the precertification process taken as a whole.

The second, more fundamental, problem with Aetna's argument is that it still does not squarely address the question of what happens to a network provider who fails to obtain a required precertification before providing medical care. Even if the plan places responsibility for obtaining precertification on the network provider, it does not state that a network provider is barred from receiving payment for care provided without precertification.   The plan provides numerous situations in which coverage is provided when required precertification is obtained after the fact.   If the plan intended such a draconian result for an

---

[5] The court notes that the chart likely contains an error, as it provides that in the case of precertification that is "not requested, would not have been covered if requested," the result is nevertheless that the care would be "covered after a precertification benefit reduction."

oversight by a network provider, one would expect to find a statement to that effect somewhere.

Plan administrators enjoy considerable latitude in interpreting the provisions of their policies, so long as they do so "in an ordinary and popular sense as would a person of average intelligence and experience." *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 541 (7th Cir. 1996).  Provided that a plan administrator does not "controvert the plain meaning of a plan," his actions are not arbitrary and capricious.  *Id.* at 540.  In this case, however, Aetna interpreted the plan to mean that only *out-of-network* care provided without required precertification would be covered, subject to a $400 precertification benefit reduction.  But *in-network* care provided without required precertification would automatically be denied "administratively," regardless of its medical necessity or cost.  Yet the plan also plainly provides that Vana, as the participant, would have coverage for his catheterization, regardless of precertification.  UW Hospital, as Vana's assignee, can assert Vana's right to coverage. Aetna's denial thus controverts the plain meaning of the plan, and must be rejected as arbitrary and capricious.


**D. UW Hospital is entitled to its reasonable attorney's fees.**

UW Hospital's amended complaint, Dkt. 6, requests its reasonable attorney's fees under 29 U.S.C. § 1132(g)(1).  The Supreme Court has interpreted this statute to allow "a court in its discretion [to] award fees and costs to either party . . . as long as the fee claimant has achieved some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (internal citations omitted).  By virtue of the court's decision to grant summary judgment, UW Hospital has satisfied this requirement.  The Seventh Circuit

has further recognized two tests for analyzing attorney's fees in ERISA cases, the first of which involves five-factors:  (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy personally an award of attorney's fees; (3) whether or not an award of attorney's fees against the offending party would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.  *Filipowicz v. Am. Stores Benefit Plans Comm.,* 56 F.3d 807, 816 (7th Cir. 1995).  The second test focuses on whether the losing party's position was "substantially justified." *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 830 (7th Cir. 1984).  The court will use the first test as it "more accurately articulates the various equitable factors appropriate to consider in determining whether attorney fees are appropriate, although the result would be the same under the second test as well for much the same reasons." *Freeland v. Unum Life Ins. Co. of Am.,* 11-cv-053, 2013 WL 4482995, at *17 (W.D. Wis. Aug. 19, 2013).  Each of these factors weighs in favor of awarding UW Hospital its attorney's fees.

In this case, the first, third, fourth, and fifth factors are particularly relevant.[6]  The facts informing the court's discretion are that Aetna did not ever adequately explain to UW Hospital its decision to withhold benefits and, when finally forced to do so in this case, Aetna advanced an interpretation of its insurance policy which effectively and unreasonably re-wrote its precertification and benefit reduction procedures.  Since UW Hospital's first request for payment, Aetna has done little more to explain its position than simply stating that the

---

[6] The court notes that Aetna "is a large and wealthy insurance company with economic incentives to deny legitimate claims systematically" and that the second factor weighs in favor of awarding UW Hospital its attorney's fees as well.  *Freeland,* 2013 WL 4482995, at *17.

denial of benefits was "administrative."   Aetna bears considerable fault for the case proceeding this far into litigation.   Moreover, Aetna has tried to interpret its policy as creating an all-or-nothing approach for its network providers—precertify or you get nothing—despite the fact that the terms of its policy do not support such an approach.  Aetna does not offer any reason for holding in-network providers to such an unforgiving standard while allowing out-of-network providers such great latitude.  An award of attorney's fees in this case might deter Aetna from similar manipulation of its policies in the future.   In addition, awarding fees in this case will confer a benefit on plan participants by urging insurers to make the terms of their policies clear up front, rather than waiting until there is dispute.

The court intends to enter one final judgment that includes the unpaid benefits, attorney's fees, and any prejudgment interest, and it requests submissions from the parties as set forth in the order below.

## ORDER

IT IS ORDERED that

1. Plaintiff's motion for summary judgment, Dkt. 13, is GRANTED;

2. Defendants' motion for summary judgment, Dkt. 17, is DENIED;

3. Plaintiff is directed to submit a calculation of the benefits it is owed as a result of Vana's July 12, 2011, procedure, along with any prejudgment interest on the delayed benefits by June 20, 2014;

4. Plaintiff is directed to submit an itemization of its reasonable attorney fees by June 20, 2014; and

5.  Defendant may file a response to Plaintiff's damage calculation and claim for attorney's fees by July 7, 2014.

Entered this 6th day of June, 2014.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge